IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


BENJAMIN KOENIG,                        §
                                        §
            *Plaintiff*,                §           5-15-CV-00822-RCL-RBF
                                        §
vs.                                     §
                                        §
ANTHONY BEEKMANS,                       §
                                        §
            *Defendant*.                §
                                        §
                                        §


## ORDER DENYING MOTION TO EXCLUDE AND/OR LIMIT
## EXPERT TESTIMONY OF JOHN S. TOOHEY, M.D.

Before the Court is the Motion to Exclude and/or Limit the Testimony of John S. Toohey,

M.D., filed by Plaintiff Benjamin Koenig [#106]. This case was assigned to the undersigned for

disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) of Appendix C of the Local

Rules of the United States District Court for the Western District of Texas [#115]. The Court has

diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and the undersigned has

authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Target Strike, Inc. v.*

*Marston & Marston, Inc.*, No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex.

Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert

testimony, which are non-dispositive). Having considered Plaintiff Koenig's motion, Defendant

Anthony Beekmans' response [#100], the relevant law, and the pleadings, the Court **DENIES** the

Motion to Exclude and/or Limit the Testimony of John S. Toohey, M.D. [#106]. The criticisms

of Dr. Toohey's testimony raised in Koenig's motion can be addressed at trial through cross-

examination or by introducing rebuttal testimony from an opposing expert.

## I.     Background

This personal injury lawsuit arises from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum as well as a compression-type fracture of the L1 disc in his spine. (*See* [#106-1]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc.

Beekmans designated Dr. John S. Toohey, a board-certified orthopedic surgeon, to offer an expert opinion regarding the nature, extent, and cause of Koenig's spinal injuries, as well as about the necessity for and cost of future medical treatment. (*See* [#50], [#106-1]). Koenig's motion does not attack Dr. Toohey's qualifications or the relevance of his testimony; it instead focuses solely on the issue of reliability.

Specifically, Koenig's urges exclusion or limitation of Dr. Toohey's testimony because Dr. Toohey's opinions on the following topics are, according to Koenig, conclusory, speculative, and unreliable:

(1)    whether Koenig suffers from lumbar spondylosis that pre-dates the accident, rather than an acute herniated disc caused by the accident;

(2)    whether future medical treatment for Koenig's alleged L5-S1 disc injury is required; and

(3)    whether the costs associated with the anterior lumbar interbody fusion recommended by Koenig's treating surgeon, Dr. Bruggeman, should not exceed $100,000.

## II.    Legal Standards

Koenig's challenges to the admissibility of Dr. Toohey's expert testimony are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009).[1] Rule 702 provides that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather—by a preponderance of the evidence—that the testimony is sufficiently

---

[1] This is not to say that state substantive law could never inform issues related to expert testimony in diversity cases. But here Koenig's straightforward challenges to the reliability of Dr. Toohey's testimony on the bases that it is too conclusory and speculative are governed by Rule 702 and the relevant federal cases. *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 292 (5th Cir. 1975) ("The propriety of admitting expert testimony in a federal trial . . . is governed by federal law . . . ."); *see also* 29 Victor James Gold, *Fed. Prac. & Proc. Evid.* § 6263 (2d. ed. 2017) (collecting cases and noting, "[t]he starting point for analysis [of the admissibility of expert testimony] is that the Federal Rules of Evidence usually control admissibility issues in [diversity] cases because admissibility is generally considered procedural, rather than substantive, in nature").

reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is "basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## III. Analysis

Dr. Toohey's testimony is sufficiently reliable for admissibility purposes.[2] Koenig's motion to exclude focuses on alleged internal inconsistencies in Dr. Toohey's deposition testimony or takes issue with the bases and sources of his opinions. (*See* Mot. at 5-8). These types of complaints go to the eventual weight a jury might afford the testimony and are most appropriately addressed at trial via cross-examination or through introduction of competing expert testimony. *See 14.38 Acres of Land*, 80 F.3d at 1077; 29 Victor James Gold, *Fed. Prac. & Proc. Evid.* § 6263 ("[E]ven where the trial court has concluded that expert testimony will help

---

[2] Dr. Toohey's unchallenged qualifications reflected by his curriculum vitae establish his expertise to opine on the matters at issue. There likewise appears to be no question that Dr. Toohey's testimony, if deemed sufficiently reliable, will be relevant and would assist the jury.

the trier of fact and is admissible, other evidence may be admitted to show that the testimony is unreliable and will be of little or no help.").

*Lumbar Spondylosis at the L5-S1 disc*. Dr. Toohey's conclusion that Koenig did not suffer a herniated L5/S1 disc as a result of the accident but instead has lumbar spondylosis that pre-dated the accident survives the motion to exclude. According to Dr. Toohey, lumbar spondylosis is a "degeneration of the disc as evidenced on either x-ray, CT scanning or MRI scanning." (Toohey Dep. at 51:15-18). Dr. Toohey explained that Koenig's February 2016 MRI, taken over two years after the accident, reveals "typical elements" of disc degeneration, including loss of water content in the disc, backwards bulging of the disc, and backwards movement of the vertebra. (*Id.* 64:4-66:18). A degenerative disc disorder, according to Dr. Toohey, "takes some more time to develop," making it medically unlikely, in his professional experience, that the collision caused an acute L5-S1 disc injury. (*See* Toohey Dep. at 75:6-8, 141:16-25, 143:11-17; *see also* Toohey Expert Rep. at 2). Supporting that conclusion, he pointed to a lack of evidence in Koenig's medical history of any acute (*i.e.*, immediate) onset of disc herniation after the collision, including complaints of leg pain or tingling. (*Id.* 56:1-13, 94:5-7, 133:5-21). In further support, he also pointed out that Koenig did not seek medical treatment for back pain until two years after the accident, which is inconsistent with the acute injury alleged and consistent with disc degeneration. (*Id.* 56:1-13; *see also* Toohey Expert Rep. at 2).

Arguing to limit or exclude Dr. Toohey's testimony, Koenig's motion relies primarily on Dr. Toohey's concession that there is no evidence dating from the day of the accident or earlier that reflects lumbar spondylosis. (*See* Mot. at 6). But the absence of such evidence from before the accident does not mean Koenig could not have suffered from lumbar spondylosis then, or that Dr. Toohey could not reliably opine to that effect. As Dr. Toohey explained, evidence of

preexisting degenerative lumbar spondylosis could be seen, in his opinion, on the post-accident February 2016 MRI and was reinforced by Koenig's post-accident history.

Ultimately, Koenig's arguments on this issue are cross-examination points. They essentially boil down to disagreements with Dr. Toohey's conclusions and his reliance on the February 2016 MRI as a basis or source for his opinion. As such, the arguments go to the weight of Dr. Toohey's opinion, not its admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077.

*The Need for Medical Treatment.* Next is Dr. Toohey's opinion that "there was no need for epidural steroid injections" or "for surgical intervention." Koenig again essentially raises criticisms that are more appropriately addressed on cross-examination. Koenig emphasizes that Dr. Toohey admitted that surgical intervention is "within the realm of medical appropriateness" and acknowledged that he has in the past performed similar surgical procedures in somewhat similar circumstances. This type of argument goes to the weight, not admissibility, of the evidence. *See id*.

Dr. Toohey provided a sufficient basis for his opinion that injections or surgical intervention would be imprudent here because Koenig does not, in Dr. Toohey's opinion, suffer from nerve damage. In support, Dr. Toohey pointed out that the locations of Koenig's pain have been inconsistent over time and that there also is no evidence of muscle atrophy in his legs. (Toohey Dep. 133:22-136:18; 142:21-143:20). From this foundation, Dr. Toohey opined that there is no nerve damage and that, in his medical opinion, steroid injections and surgery would be inadvisable because they pose an unacceptably high risk and promise an uncertain outcome. (*Id.* 132:9-20; 134:1-7). Although Koenig is free to disagree with these conclusions, such disagreement is not a valid basis to limit or exclude Dr. Toohey's testimony; Koenig may instead take issue with Dr. Toohey's credibility and conclusions at trial.

*Costs*. Koenig's final argument addresses Dr. Toohey's opinion on the total cost of the surgery recommended by Koenig's treating physician, Dr. Bruggeman, which in Dr. Toohey's opinion should not exceed $100,000. Dr. Toohey provided his cost opinion based directly on his personal "knowledge of billing from all the hospitals here in town"—a topic with which he deals on either a "daily or weekly basis." (*Id.* 99:23-100:1). He explained in his deposition that he "look[s] at all the billing from [his] office for all of our . . . spine surgeons for procedures they do much like this." (*Id.* 100:22-24). And he also "see[s] records from a number of the hospitals around this city for similar procedures." (*Id.* 100:25-101:1). He then explained that his $100,000 estimate is based on a hospital fee for two days of $60,000; a surgeon's fee of $15,000 to $20,000; an assistant surgeon's fee of $3,000 to $4,000; and an anesthesia fee of $3,000. (*Id.* 150:10-152:25).

An expert's opinion may be based on personal experience, provided the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. That said, an opinion on medical costs could benefit from as much underlying factual support as can be provided. Billing records, fee structures, or similar matters would seem quite helpful and could, in an appropriate case, be a necessary prerequisite to a reliable opinion. Koenig attacks Dr. Toohey's opinion for failing to provide such support in addition to Dr. Toohey's personal knowledge of these billing matters. (*See* Mot. at 8-9). Koenig, however, does not question Dr. Toohey's personal experience or qualifications in this regard.

Ultimately, the Court is reassured that Dr. Toohey's cost estimates based on his 35 years of personal experience with local medical billing practices for these types of procedures reflects the same type of intellectual rigor one might expect from an expert outside the courtroom.

Notably, Dr. Toohey is not the only physician in the case to base a medical-costs opinion on personal experience. Dr. Bruggeman, Koenig's treating physician, employed much the same approach in reaching competing cost estimates of $200,000 to $250,000 for facility charges and $48,000 to $49,000 for the surgical fee. (*See* Bruggeman Dep. at 115:21-116:8, 119:8-22). The disparity between these two physicians' experience-based cost estimates would be best resolved at trial. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) ("[W]here non-scientific expert testimony is involved, . . . the relevant reliability concerns may focus upon personal knowledge or experience") (internal quotation marks omitted and citing *Kumho Tire*, 526 U.S. at 150).

## IV. Conclusion

For the reasons discussed above, the Motion to Exclude and/or Limit the Testimony of John S. Toohey, M.D filed by Plaintiff Benjamin Koenig [#106] is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 9th day of November, 2017.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE