IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENJAMIN KOENIG, | § § § | |
| *Plaintiff*, | § § | 5-15-CV-00822-RCL-RBF |
| vs. | § § § | |
| ANTHONY BEEKMANS, | § § § | |
| *Defendant*. | § § § § | |

## ORDER DENYING MOTION TO LIMIT TESTIMONY
## OF DEFENSE EXPERT DR. AUBER

Before the Court is the Opposed Motion to Limit the Testimony of Defense Expert Andrew E. Auber, M.D. [#116] filed by Plaintiff Benjamin Koenig. This case was assigned to the undersigned for disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#115]. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g., Target Strike, Inc. v. Marston & Marston, Inc*., No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert testimony, which are non-dispositive). Having considered Plaintiff Koenig's motion, Defendant Anthony Beekmans' response [#108], the relevant law, and the pleadings, the Court **DENIES** the Motion to Limit the Testimony of Defense Expert Andrew E. Auber, M.D. [#116]. The criticisms of Dr. Auber's testimony raised in Koenig's motion can be addressed at trial through cross-examination or by introducing rebuttal testimony from an opposing expert.

1

**I.     Background**

This personal injury lawsuit stems from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum and a compression-type fracture of the L1 disc in his spine. (*See* [#108-3]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc.

Beekmans designated Dr. Andrew E. Auber, a board-certified neuroradiologist, to evaluate Koenig's radiological care and interpret his radiologic studies performed on and after the date of the accident. (*See* [#73], [#108-3]). Koenig's motion does not attack Dr. Auber's qualifications or the relevance of his testimony; it focuses only on the issue of reliability.

Koenig urges either exclusion of Dr. Auber as an expert or limitation of his testimony because, according to Koenig, Dr. Auber's second opinion is conclusory, speculative, and unreliable in concluding that Koenig suffers from mild degeneration at the L5-S1 disc that pre-dates the accident rather than a herniated disc caused by the accident.[1] Koenig does not take issue with the reliability or helpfulness to the jury of Dr. Auber's other two opinions regarding (1) the extent and nature of Koenig's sternal and L1 fractures and (2) whether the MEG imaging of Koenig's brain reveals the presence of a mild traumatic brain injury. Accordingly, this order addresses only Koenig's arguments attacking the reliability of Dr. Auber's second opinion concerning Koenig's L5-S1 disc condition.

---

[1] Koenig concludes his motion by also seeking to preclude Dr. Auber from testifying "regarding projected future medical expenses." (Mot. at 7). But Dr. Auber does not offer an opinion regarding medical expenses in either his report or deposition and specifically denies any intent to do so at trial. (*See* Auber Dep. 16:17-21). Having no indication from Koenig's briefing as to the source of the argument's premise (*i.e.*, the notion that Dr. Auber intends to opine and testify regarding projected future medical costs), the undersigned will not address the argument here.

## II. Legal Standards

Koenig's challenges to the admissibility of Dr. Auber's expert testimony are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009).[2] Rule 702 provides that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather—by a preponderance of the evidence—that the testimony is sufficiently reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is

---

[2] This is not to say that state substantive law could never inform issues related to expert testimony in diversity cases. But here Koenig's straightforward challenges to the reliability of Dr. Auber's testimony on the bases that it is too conclusory and speculative are governed by Rule 702 and the relevant federal cases. *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 292 (5th Cir. 1975) ("The propriety of admitting expert testimony in a federal trial . . . is governed by federal law . . . ."); *see also* 29 Victor James Gold, *Fed. Prac. & Proc. Evid.* § 6263 (2d. ed. 2017) (collecting cases and noting, "[t]he starting point for analysis [of the admissibility of expert testimony] is that the Federal Rules of Evidence usually control admissibility issues in [diversity] cases because admissibility is generally considered procedural, rather than substantive, in nature").

"basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

### III. Analysis

Dr. Auber's testimony is sufficiently reliable for admissibility purposes.[3] Koenig's motion to exclude takes issue with the bases and sources of his opinions and the fact that Dr. Auber's opinion conflicts with the opinion of Beekmans' other retained expert, Dr. Toohey. (*See* Mot. at 5-8). These types of complaints go to the eventual weight a jury might afford the testimony and are most appropriately addressed at trial via cross-examination or through introduction of competing expert testimony. *See 14.38 Acres of Land*, 80 F.3d at 1077; 29 Victor James Gold, *Fed. Prac. & Proc. Evid.* § 6263 ("[E]ven where the trial court has concluded that expert testimony will help the trier of fact and is admissible, other evidence may be admitted to show that the testimony is unreliable and will be of little or no help.").

---

[3] Dr. Auber's unchallenged qualifications reflected by his curriculum vitae establish his expertise to opine on the matters at issue. There likewise appears to be no question that Dr. Auber's testimony, if deemed sufficiently reliable, will be relevant and would assist the jury.

Dr. Auber testified that the following spinal abnormalities present on Koenig's October 2013 emergency room CT scan reveal the presence of mild disc degeneration:[4] (1) the posterior position of the vertebral bone indicating the presence of mild retrolisthesis (Auber Dep. 60:7-10); (2) mild degeneration of the left and right facet joints (*Id.* 65:9-13); and (3) "heaped-up" bone jutted into the back side of the neuroforamen, impinging the nerve (*Id.* 67:10-25). According to Dr. Auber, this degeneration must have pre-existed the collision because it takes more than several hours from the time of trauma for these degenerative findings to appear. (*Id.* 42:10-15). In further support of this conclusion, Dr. Auber observed that these same degenerative findings appear unchanged on Koenig's 2016 MRI. (*Id.* 26:5-9; 37:11-13; 42:6-22). With respect to the L1-S5 disc itself, Dr. Auber testified that both the CT scan and MRI reveal the same small disc protrusion. (*Id.* 64:17-65:11; 68:7-17).[5] Because most traumatically altered discs typically change acutely in a two-and-a-half year period and because this disc protrusion appears in conjunction with the other above-listed degenerative findings, Dr. Auber ultimately opines that Koenig's L5-S1 disc protrusion is also likely degenerative in nature and not caused by the accident. (*Id.* 42:2-22; 69:17).

---

[4] While Dr. Auber refers to this disc degeneration as mild spondylosis in his report, he testified in his deposition that the lack of a fracture across the pars interarticularis indicates the absence of spondylosis. (Auber Dep. 60:9-25; 61:7-8). Koenig may explore this internal inconsistency on cross-examination. *See, e.g., Freeny v. Murphy Oil Corp.*, 2:13-CV-791-RSP, 2015 WL 11089600, at *2 (E.D. Tex. June 4, 2015) (defendant's concerns regarding the inconsistent positions taken by the expert in his report and testimony "implicate the credibility of this witness and not the reliability of his methodology"); *Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 9:07-CV-46, 2008 WL 11344916, at *3 n.4 (E.D. Tex. Aug. 29, 2008) (same).

[5] Although Dr. Auber arguably takes an inconsistent position in his report regarding whether the small disc protrusion is evident on Koenig's CT scan (*Compare* [#108-3] at 4-5 *with* Auber Dep. 64:17-66:4), the context of his deposition testimony reveals that in his opinion the disc is "well seen, but not optimally seen" on the CT scan. (Auber Dep. 42:8-9). Regardless, this is not a sufficient basis to exclude Dr. Auber as an expert. *See Freeny,* 2015 WL 11089600, at *2; *Iovate Health Scis.*, 2008 WL 11344916, at *3 n.4.

Arguing to limit or exclude Dr. Auber's testimony, Koenig emphasizes Dr. Auber's reliance on the October 2013 emergency room CT scan, which focuses on Koenig's abdomen and pelvis rather than on his lumbar spine. (Mot. at 6). Koenig also invokes Dr. Auber's admission that an MRI is a better diagnostic tool than a CT scan. *Id*. But Koenig concedes, however, that here the CT scan "picked up the L1 and L5 levels." *Id*. And Koenig also does not criticize the validity of Dr. Auber's methodology in interpreting the CT scan or discredit Dr. Auber's explanation that "disc injury can be well evaluated on a CT and better evaluated on [an] MRI." (Auber Dep. 38:12-18). Ultimately, the quality of the imaging upon which Dr. Auber bases his opinion goes to the weight of his testimony rather than its admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077. Similarly, that Beekmans' other retained expert, Dr. Toohey, disagrees that degeneration can be viewed on the CT scan and that Koenig has no medical history of low back pain prior to the accident are not grounds to strike Dr. Auber as an expert. Rather, these criticisms are proper fodder for cross-examination.

The Court recognizes that at one point during his deposition Dr. Auber conceded that comparing the degenerative changes in Koenig's October 2013 CT scan with those present in his 2016 MRI would require "some speculation." (Auber Dep. 38:1-4). Read in context, however, this statement indicates that Dr. Auber was simply referring to the fact that there are some differences between the images generated by a CT scan and those generated by an MRI, and that an MRI can be more helpful than a CT scan. (*Id*. 37:14-38:18). This alone does not render Dr. Auber's comparison of the CT scan and MRI unreliable. Dr. Auber explained that both the CT scan and the MRI provide images of the same anatomic structure, and despite the differences in imaging, he felt able to make a sufficiently reliable comparison. (*Id.* 37:22-25).

Dr. Auber's testimony should not be limited or excluded because he "cannot pick a date at which Plaintiff's low back symptoms stopped being related to the crash and started being

related to degenerative changes," as Koenig argues. (Mot. at 6). Nowhere in Dr. Auber's deposition or his report does he purport to opine on the exact cause of Koenig's low back pain. When specifically questioned on this issue, Dr. Auber stated simply that he cannot agree that *all* of Koenig's low back pain is related to the accident. (Auber Dep. 30:4-21; 34:1-35:24). According to Dr. Auber, there is an equal probability that some or all of Koenig's current low back pain could be related to the aforementioned pre-existing degenerative disc changes. (*Id.* 36:2-36:19). Dr. Auber's inability to pinpoint the exact cause of Koenig's current low back pain does not mean Koenig could not have suffered from degenerative disc changes at the L5-S1 that pre-dated the accident, or that Dr. Auber could not reliably opine to that effect.

As Dr. Auber explained, evidence of preexisting lumbar degenerative changes could be seen, in his opinion, on the post-accident October 2013 CT scan and was reinforced by the 2016 MRI. Ultimately, Koenig's arguments on this issue are cross-examination points. They essentially boil down to disagreements with Dr. Auber's conclusions and his reliance on the October 2013 CT scan as a basis or source for his opinion. As such, the arguments go to the weight of Dr. Auber's opinion, not its admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077.

**IV. Conclusion**

For the reasons discussed above, the Motion to Limit the Testimony of Defense Expert Andrew E. Auber, M.D [#116] filed by Plaintiff Benjamin Koenig is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 30th day of November, 2017.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE