IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENJAMIN KOENIG, | § § | |
| *Plaintiff*, | § § § | 5-15-CV-00822-RCL-RBF |
| vs. | § § | |
| ANTHONY BEEKMANS, | § § § | |
| *Defendant*. | § § § § | |

## ORDER DENYING MOTION TO LIMIT
## THE TESTIMONY OF DR. WILLIAM DAILEY

Before the Court is the Motion to Limit the Testimony of Defendants' Expert, Dr. William Dailey [#112] filed by Plaintiff Benjamin Koenig. This case was assigned to the undersigned for disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#115]. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert testimony, which are non-dispositive). Having considered Plaintiff Koenig's Motion [#112], Defendant Anthony Beekmans' Response [#114], the relevant law, and the pleadings, the Court **DENIES** the Motion to Limit the Testimony of Defendants' Expert, Dr. William Dailey [#112]. The Court finds that Dr. Dailey is sufficiently qualified to testify as an expert regarding the methods for diagnosing traumatic brain injuries and other neurological deficits and that his testimony is sufficiently reliable. The criticisms of Dr. Dailey raised in

1

Koenig's motion can be addressed at trial through cross-examination or by introducing rebuttal testimony from an opposing expert.

**I.   Background**

This personal injury lawsuit arises from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum as well as a compression-type fracture of the L1 disc in his spine. (*See* [#106-1]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc.

Koenig designated Dr. Donald Robin to opine regarding whether he sustained a traumatic brain injury based upon the results of a computer-based test known as "the Starry Night test." (*See* [#41], [#75]). Dr. Dailey was designated to evaluate the appropriateness of the Starry Night test in diagnosing a traumatic brain injury and the presence of other neurological deficits. (*See* Resp.) Koenig's motion attacks Dr. Dailey's qualifications as well as the reliability of his opinion and testimony regarding the Starry Night test's ability to reliably diagnose a traumatic brain injury. Dr. Dailey's report (*see* [#73]) has not been provided to the Court by either party for review, although portions of his deposition testimony are available to the Court.

**II.   Legal Standards**

Koenig's challenges to the admissibility of Dr. Dailey's expert testimony are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex.

Feb. 18, 2009). Rule 702 provides that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).[1] Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather—by a preponderance of the evidence—that the testimony is sufficiently reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is "basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but

---

[1] Beekmans argues that the Court should deny Koenig's motion because it was filed four days after the court-ordered deadline. (*See* Mot. at 3). In light of the Court's role as an evidentiary "gate-keeper[]," the Court will consider the merits of the motion.

3

admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

**III.     Analysis**

Dr. Dailey is qualified to provide an opinion regarding the methods for diagnosing a traumatic brain injury and other neurological deficits, including the appropriateness of the Starry Night test to make these diagnoses. Dr. Dailey's opinions criticizing the Starry Night test are sufficiently reliable.

*Qualifications.* Experts who are not qualified to testify in a particular field or on a given subject should be excluded from testifying. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Rule 702 and *Daubert* require that district courts be "assured that the proffered witness is qualified to testify [as an expert] by virtue of his 'knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed. R. Evid. 702).

Dr. Dailey is sufficiently qualified for purposes of Rule 702 and *Daubert*. Dr. Dailey is a neuropsychologist with a doctoral degree in biological psychology from the University of Texas. (Dailey Dep. 102:17-23). He has performed neuropsychological assessments on patients, including those who have been subjected to trauma, for over 30 years until his very recent retirement. (*Id.* 102:22-103:22; 106:13- 109:22). Koenig does not dispute that Dr. Dailey is qualified to opine regarding the methods of pencil-and-paper neurological testing, which Dr. Dailey regularly performed in his clinical practice. (Resp. 4).

Koenig argues that Dr. Dailey is not qualified to offer opinions regarding the Starry Night test because he has no specialized knowledge regarding this specific test. In support, Koenig

4

points to excerpts from Dr. Dailey's deposition testimony in which Dr. Dailey admits he was unfamiliar with the Starry Night test before he was retained as an expert in this case. Koenig also points to Dr. Dailey's concession that he reviewed only a limited amount of research along with Dr. Robin's deposition testimony prior to offering his critique of the clinical use of the test. (Mot. at 4). But Dr. Dailey need not be an expert in the Starry Night test to reliably criticize its clinical use.

Dr. Dailey is neuropsychologist with education and experience relevant to the diagnosis of traumatic brain injuries. "Rule 702 does not mandate that the expert be highly qualified in order to testify about a given issue, and the issue of qualification has been described as presenting a 'low threshold' for the proponent to clear." *DiSalvatore v. Foretravel, Inc.*, No. 9:14–CV–00150, 2016 WL 7742824, at *10 (E.D. Tex. Jul. 20, 2016). Moreover, "[t]he standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). As long as an "expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 809 (3d Cir. 1997). Here, Dr. Dailey's qualifications in the general field related to the subject matter in question, *see Guzman*, 2008 WL 5273713, at *15, satisfies the "low threshold" set by *Daubert*. *DiSalvatore*, 2016 WL 7742824, at *10.

*Reliability*. Dr. Dailey testified that he reviewed a number of articles pertaining to the Starry Night test, including one drafted by Dr. Robin, Koenig's expert and the test's creator. (Daily Dep. 19:13-23). Dr. Dailey's criticisms of the Starry Night test derive from his experience

in performing neuropsychological assessments, the principles discussed in the articles on the Starry Night test, and the explanation regarding the test provided by Dr. Robin at his deposition. (*Id.* 21:1-14). Koenig's criticisms of Dr. Dailey essentially boil down to Dr. Dailey's lack of prior experience with the Starry Night test and his alleged failure to conduct a comprehensive review of the scientific literature before formulating his opinion. In support, Koenig specifically points to a peer-reviewed article (to which Beekmans objects on hearsay grounds) that allegedly contradicts Dr. Dailey's opinions. These arguments, however, all relate to either the bases and sources or correctness of Dr. Dailey's opinions. They are not grounds for limiting Dr. Dailey's testimony. *See 14.38 Acres of Land*, 80 F.3d at 1077; *Moore*, 151 F.3d at 276; *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 803 (E.D. La. 2011) (noting that "it is far from clear that an expert must review all of the available studies simply to cross the threshold of admissibility," and therefore holding that "the presence of studies that cut against the expert's opinion and that are not accounted for by the expert is a subject for cross-examination, not a barrier to admissibility").

### IV. Conclusion

For these reasons, the Motion to Limit the Testimony of Defendants' Expert, Dr. William Dailey [#112] filed by Plaintiff Benjamin Koenig is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 1st day of December, 2017.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE