IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENJAMIN KOENIG, | § § | |
| *Plaintiff*, | § § | 5-15-CV-00822-RCL-RBF |
| vs. | § § § | |
| ANTHONY BEEKMANS, | § § | |
| *Defendant*. | § § | |

## ORDER GRANTING IN PART MOTION TO EXCLUDE TESTIMONY OF BILLY S. COX, JR.

Before the Court is the Motion to Exclude the Testimony of Billy S. Cox, Jr., filed by Plaintiff Benjamin Koenig [#89]. This case was assigned to the undersigned for disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#115]. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert testimony, which are non-dispositive). Having considered Plaintiff Koenig's Motion [#89], Defendant Anthony Beekmans' Response [#101], the relevant law, and the pleadings, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Exclude the Testimony of Billy S. Cox, Jr., filed by Plaintiff Benjamin Koenig [#89]. The Court finds that Cox is sufficiently qualified to testify as an expert on the topic of accident reconstruction in this case but that his testimony should be limited as discussed herein.

1

## I.  Background

This personal injury lawsuit arises from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum as well as a compression-type fracture of the L1 disc in his spine. (*See* [#106-1]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc. The parties also dispute who, Koenig or Beekmans, caused the accident, including whether one of them was driving on the wrong side of the road.

Defendant Beekmans designated accident reconstructionist Billy S. Cox to offer an expert opinion regarding the accident's causes and the sequence of events that led up to it. (*See* [#89-1]). Cox concludes that the accident occurred because Koenig was driving his vehicle eastbound in the westbound lane lawfully occupied by Beekmans' vehicle. According to Cox, Beekmans was traveling at or below the posted speed limit (45 mph) when he noticed Koenig's vehicle approaching his lane of travel. Cox concludes that once Beekmans noticed Koenig's vehicle approaching his lane, Beekmans reacted by steering his vehicle to his left and applying his brakes, which reduced Beekmans' speed to 2 to 5 mph. According to Cox, Koenig was traveling between 40 to 50 mph and also changed lanes to the impact point but did not apply his brakes before the collision. Cox concludes that Beekmans' decisions to steer to his left to the point of impact and apply his brakes to try to avoid the collision were appropriate. He also concludes that had Koenig properly applied his brakes, the parties could have avoided the accident altogether. (*Id.* at 12).

Koenig's motion attacks Cox's qualifications to testify as an expert as well as the reliability and helpfulness of his opinions and testimony.

## II. Legal Standards

Koenig's challenges to the admissibility of Cox's expert testimony are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009). Rule 702 provides that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [experts'] principles and methodology, not on the conclusions that [experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather show—by a preponderance of the evidence—that the testimony is sufficiently reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is "basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078

(5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

### III. Analysis

Cox is qualified to provide an accident reconstruction analysis in this case, and his testimony regarding the vehicles' momentum prior to impact, as well as the parties' perception times and the reasonableness of each party's accident-avoidance maneuvers are sufficiently reliable and helpful to survive the motion to exclude. But Cox cannot testify regarding which lane either party was occupying as the vehicles approached one another or whether either party was traveling at the posted speed limit at that same time because his conclusions on those points are unreliable.

*Qualifications*. Cox's qualifications satisfy Rule 702 and *Daubert*, which require that a "proffered witness is qualified to testify [as an expert] by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702). "Rule 702 does not mandate that the expert be highly qualified in order to testify about a given issue, and the issue of qualification has been described as presenting a 'low threshold' for the proponent to clear." *DiSalvatore v. Foretravel, Inc.*, No. 9:14–CV–00150, 2016 WL 7742824, at *10 (E.D. Tex. Jul. 20, 2016); *see also Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). As long as an "expert meets liberal minimum qualifications, then the level of the

4

expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 809 (3d Cir. 1997).

Cox's experience, training, and education with accident reconstruction qualify him to provide an expert opinion in this case. Cox's resume and deposition testimony reflect over 25 years of experience as a full-time forensic accident reconstructionist, and involvement in thousands of accident reconstruction cases. (*See* [#89-3]; Cox Dep. 8:1-3; 119:23-123:11). Cox is also accredited by the Accreditation Commission for Traffic Accident Reconstruction, the only accreditation available for accident reconstructionists, and has taken the necessary continuing education courses to keep his accreditation current for the past 20 years. (Cox Dep. 124:8-125:1). In short, Cox's qualifications meet the "low threshold" set by *Daubert*. *DiSalvatore*, 2016 WL 7742824, at *10.

Koenig's arguments attacking Cox's lack of an undergraduate or advanced degree in either engineering or physics are unavailing. (*See* Mot. at 5). Neither a college degree nor an advanced degree is a requirement for an expert witness. *See, e.g., Dean v. Thermwood Corp.*, No. 10-CV-433-CVE-PJC, 2012 WL 90442, at *4 (N.D. Okla. Jan. 11, 2012) (citing Fed. R. Evid. 702). Indeed, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" alone, or "experience in conjunction with other knowledge, skill training, or education." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). And, in any event, Cox is approximately 40 hours shy of a degree in biomedical engineering, which consisted of courses in physics, calculus, design, statistics, and engineering, including specifically biomechanical or crash testing. (*Id.* 114:16-1116:21).

*Reliability – momentum at impact.* Cox's conclusions regarding the momentum of the parties' vehicles at the time of impact, including the extent to which they did or did not apply

5

their brakes and how they steered their vehicles immediately before impact, is sufficiently reliable and potentially helpful to the jury for admissibility purposes. Cox testified that he reached his momentum conclusion by using a standard momentum equation, (Cox Dep. 91:11-12; 99:8-9), with the assistance of the AR Pro 10 software program that is commonly used in the industry. (*Id*. 24:17-25:2). Also assisting him were measurements yielded by his photogrammetry (a scientific method for making measurements out of photographs) or crush-profile analysis, which he used to determine the relative speeds of the vehicles at impact (35:6-7; 39:13-15). Cox explained that he considered the specifications of the vehicles (*id*. 128:15), the industry accepted 1.5-second reaction time (*id*. 58:13-23), and incorporated into his analysis principles of conservation of momentum, restitution, and thermodynamics. (*Id*. 128:15-22). Cox explained in his deposition testimony that his momentum analysis incorporated "standard techniques," (*id*. 26:20-21; 81:25-82:3; 91:11-12), and that his mathematical calculations are corroborated by the physical evidence at the scene, *i.e.,* the skid marks and damage to the vehicles, (*id*. 26:13-23), as well as by Cox's own physical inspection of the scene and measurements. (*Id*. 42:18-43:4; 57:10-58:12).

Koenig does not argue that Cox's methodology departs from standard industry practice. *See Daubert*, 509 U.S. at 594 (noting that "general acceptance" bears on the reliability inquiry); *see also Dilts v. United Grp. Servs., LLC*, 500 F. App'x 400, 444 (6th Cir. 2012) (reversing the district court's exclusion of an accident reconstruction expert's testimony as unreliable where the expert performed calculations and relied on the laws of physics and mathematics generally employed in accident reconstruction). Instead, Koenig takes issue with Cox's failure to: calculate the rearward projections and the rotational forces of the impact; conduct a probability analysis; consider Beekmans' alleged level of intoxication; and account for his assumption relating to a post-impact co-efficient friction. (*See* Mot. at 5-6). But in doing so Koenig does not explain why

6

Cox's alleged failure to take these various considerations into account renders his testimony inadmissibly unreliable. Koenig's protestations in this regard are not corroborated by any reference to an opposing expert's testimony. He also does not cite any peer-review journal or similar authority establishing that standard industry practice requires performing these types of calculations only in the manner Koenig proposes. Also absent from this portion of Koenig's motion is any convincing argument that Cox's underlying assumptions are impermissibly speculative or unsupported by the available evidence. *See TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, No. 2:08-CV-471-WCB, 2012 WL 3283356, at *2 (E.D. Tex. Aug. 10, 2012) (noting, "experts are allowed to rely on assumptions as part of their opinions, as long as those assumptions are supported by evidence at trial").

In light of the above, Koenig's objections to Cox's momentum analysis are insufficient to warrant excluding Cox's testimony, and any complaints about assumptions underlying Cox's calculations go to the weight of his testimony, rather than its admissibility. *See, e.g., In re Zurn Pex Plumbing Prods. Liability Litig.*, 644 F.3d 604, 615 (8th Cir. 2011) ("An expert's opinions are not inadmissible simply because an underlying assumption may be contestable."); *Costly v. Nissan Motor Co., Ltd*, No. CV 14-244-SDD-EWD, 2016 WL 8252924, at *3 (M.D. La. Aug. 31, 2016) (expert's failure to calculate the vehicle's principal direction of force at the time of impact and the vehicle speed at impact when conducting an accident reconstruction affect the weight to be assigned to the opinion rather than its admissibility); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792 (N.D. Tex. 2013) (rejecting plaintiffs' argument that expert must be excluded because his damages calculations did not adequately account for other variables because such a challenge goes to the weight of the testimony, not its admissibility). Koenig may explore the basis and assumptions underlying Cox's calculations on cross-examination. *See Petroleum Helicopters, Inc. v. Apical Indus., Inc.*, No. 6:13-CV-00015, 2017 WL 4127733, at *3

(W.D. La. Sept. 15, 2017) ("The opposing party has the right to cross examine an expert and to explore the assumptions, facts, and methodology underlying the expert's opinion, and a jury is free to weigh an expert's credibility and to accept or reject an expert's opinion testimony.").

*Reliability – perception time and reasonableness of accident-avoidance maneuvers.* Much the same conclusion applies, and for much the same reasons, to Cox's opinion regarding the parties' perception times and the reasonableness of their accident-avoidance maneuvers. Cox's perception-times conclusion derives from his application of an industry accepted 1.5-second reaction time, (Cox. Dep. 58:13-23), and measurements taken at the scene, which demonstrate, according to Cox, that the parties were within 500 feet of each other before recognizing they were on a collision course. (*Id.* 63:19-25). Cox's opinion regarding the reasonableness of Beekmans' accident-avoidance maneuvers is based on U.S. Naval Observatory data and weather data from the night of the collision, as well as Cox's personal inspection of the scene. (Cox Rep. at 5). Moreover, although Koenig seeks to strike Cox entirely, he does not challenge the reliability of these particular opinions and conclusions. Any objections Koenig has to these conclusions should be raised at trial and are not a proper basis for entirely excluding Cox as an expert witness, as Koenig requests.

*Reliability – lanes occupied and speed leading up to the collision.* Cox's conclusions regarding the lanes occupied by the vehicles leading up to the accident and the vehicles' speeds as they approached the accident scene are a different story. During his deposition, Cox admitted that his conclusion about which vehicle was in which lane as they approached each other from a distance relied exclusively on Beekmans' testimony and Cox's unsupported personal belief that a driver would not reasonably maneuver onto the wrong side of the road after making a turn in an intersection the size of the one involved in this case. (Cox. Dep. 65:2-67:8). Cox's report is similarly deficient on these points. (*See* Cox Rep. 7) (finding it "improbable" that Beekmans

8

steered into the eastbound (*i.e.*, the "wrong") lane based on obvious pavement markings and the speculative likelihood that Beekmans would have encountered other traffic in the 35 seconds it would have taken to arrive at the scene of the accident). Cox also admitted during his deposition that no physical evidence put either Koenig or Beekmans in the westbound lane. (Cox. Dep. 79:7-14; 79:21-80:13).

To be reliable, an expert's testimony must be based on "sufficient facts or data." Fed. R. Evid. 702(b). Without additional underlying facts or data to support Cox's conclusion about the lane either driver occupied as the vehicles approached each other from a distance, Cox's opinion on this topic is too speculative to be admitted. *See New Century Fin., Inc. v. New Century Fin. Corp.*, No. CIV.A. C-04-437, 2005 WL 5976552, at *4 (S.D. Tex. Nov. 29, 2005) ("It is well established that the Court should exclude an expert's testimony if the testimony is based on facts and speculations designed to bolster [a party's] position and that the testimony lacks factual foundation.")[1]

A similar lack of underlying facts or data characterizes Cox's opinion that Beekmans was traveling at the posted speed limit as he approached Koenig's vehicle and the accident scene. Cox conceded during his deposition that this opinion on this point is based on nothing more than an unsupported assumption that both vehicles were traveling at 40 mph. (Cox Dep. 60:21-61:2). This assumption, unsupported by any basis in fact, cannot be offered as an expert's conclusion. To the extent Cox may have included this assumption, along with the facts and data discussed above, in his calculations to determine momentum at the moment of impact, Koenig may explore the basis for the assumption on cross-examination. *See Petroleum Helicopters*, 2017 WL 4127733, at *3.

---

[1] Cox clarified that his momentum calculations do not depend on the lane that either party occupied as the vehicles approached one another from a distance. (Cox Dep. 92:6-11). Accordingly, Cox's lack of reliability on the lanes that each vehicle occupied does not affect his reliability as to the momentum involved in the impact.

## IV. Conclusion

For these reasons, the Motion to Exclude the Testimony of Billy S. Cox, Jr., filed by Plaintiff Benjamin Koenig [#89] is **GRANTED IN PART AND DENIED IN PART**. Cox may opine regarding the momentum of the parties' vehicles at the time of impact, including the extent to which they did or did not apply their brakes and how they steered their vehicles immediately before impact. He may also opine regarding the parties' perception times and the reasonableness of their accident-avoidance maneuvers. But he may not offer conclusions or opinions concerning the lane each driver supposedly occupied as the vehicles approached one another and whether either party complied with the posted speed limit.

**IT IS SO ORDERED**.

SIGNED this 5th day of December, 2017.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE