IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENJAMIN KOENIG, | § § § | 5-15-CV-00822-RCL-RBF |
| *Plaintiff*, | § § | |
| vs. | § § | |
| ANTHONY BEEKMANS, | § § § | |
| *Defendant*. | § | |

## ORDER GRANTING MOTION TO EXCLUDE AND/OR LIMIT TESTIMONY OF CHARLES R. RUBLE

Before the Court is the Motion to Exclude and/or Limit the Testimony of Charles R. Ruble filed by Defendant Anthony Beekmans [#130]. This case was assigned to the undersigned for disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#115]. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert testimony, which are non-dispositive).

Having considered Defendant Beekmans' Motion [#130], Plaintiff Benjamin Koenig's Response [#136], the relevant law, the pleadings, and the governing scheduling order, the Court **GRANTS** the Motion to Exclude and/or Limit the Testimony of Charles R. Ruble filed by Defendant Anthony Beekmans [#130]. Ruble's testimony shall be limited to the opinions Koenig timely disclosed—the location of the collision, the vehicles' impact positions relative to one another, the principle direction of force, and the reasonableness of the parties' steering maneuvers prior to impact. The remainder of Ruble's opinions regarding the parties' pre-impact

1

movements (save for their steering maneuvers), including the lanes either party occupied prior to impact, the impact speed, the distance traveled by the parties prior to impact, and how the parties applied their breaks, as well as Ruble's opinion that the gouge marks on the pavement were caused by extraction of the vehicles, are excluded. Nor may Ruble be called to rebut the testimony of Beekmans' accident reconstructionist on these topics or any others outside the scope of Ruble's report. Koenig failed to timely disclose these new opinions in violation of Rule 26 and the Court's Scheduling Order, and his failure to do so is neither substantially justified nor harmless. Finally, Ruble may rely upon the newly disclosed diagrams contained in Exhibit No. 19 to his deposition only to the extent he does so to support his timely disclosed opinions.

**I.  Background**

This personal injury lawsuit arises from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum as well as a compression-type fracture of the L1 disc in his spine. (*See* [#106-1]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc. The parties also dispute whether it was Koenig or Beekmans who caused the accident, including whether one of them was driving on the wrong side of the road.

Shortly after the accident and before filing suit, Koenig, by and through his prior counsel, retained accident reconstructionist Charles R. Ruble. Specifically, Ruble was tasked with making a determination about where the collision occurred—on the roadway as the Sheriff's Department believed or off the roadway as Koenig believed. (Ruble Dep. 8:6-23; 9:22-24). After reviewing the accident report authored by Deputy Antonio Alvarez, interviewing Deputy Alvarez,

reviewing pictures of the accident, and inspecting the accident site, Ruble issued his report on January 16, 2014. (*See* Ruble Rep. at Dkt. No. 130-2; Ruble Dep. 45:8-11; 46:16-18). Ruble offers the following four findings in his report:

(1) Deputy Alvarez's accident report diagram and contributing factors are incorrect and unfounded.

(2) The collision occurred on the south edge of the eastbound lane, Mr. Koenig's lane of travel.

(3) The location and angle of the vehicles' contact indicates Mr. Koenig executed an appropriate avoidance maneuver and Mr. Beekmans executed a faulty evasive maneuver.

(4) Mr. Beekmans' approach and evasive response may have been influenced by his vehicle right side operation and opposite lane travel experience.

(Ruble Rep. at 3-4). Although not an enumerated "finding" in the report, Ruble also discusses and diagrams in the report the principle direction of force and the vehicle-to-vehicle positions at initial contact. (Ruble Rep. at 2-3, Exs. 2 &3 to Ruble Rep.). Finally, Ruble notes in his report that some of the gouge marks in the pavement were caused by the collision itself. (Ruble Rep. at 2-3).

Koenig first designated Ruble as an expert on September 19, 2016. (*See* [#41] at 5-6). Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), Koenig disclosed that:

> Mr. Ruble is expected to testify regarding his investigation and reconstruction of the accident that forms the basis of this lawsuit. The general substance of Mr. Ruble's mental impressions and opinions and a brief summary of the basis for them are contained in his report attached hereto. Please also see any deposition testimony that may be taken of this expert.

(*Id.*) In accordance with this disclosure, Koenig produced Ruble's January 2014 report and resume. (*See* Mot. ¶ 8). After submitting his report in January 2014, Ruble did not perform any

other work on the case until February 4, 2016, when Koenig's current counsel[1] requested that Ruble perform additional accident reconstruction based on additional case-related information. (Ruble Dep. 46:16-48:19). Although Koenig has supplemented his expert disclosures on several occasions, he has never produced a supplemental or amended report for Ruble. (*See* Mot. ¶ 8).

Beekmans deposed Ruble on November 1, 2017. (*See* Ruble Dep.). During this deposition, Ruble disclosed for the first time several new opinions regarding the parties' pre-impact movements, including: (1) the parties' speed at the time of impact, (*id.* 27:19-28:8); (2) how the vehicles rotated upon impact, (*id.* 31:11-21; 33:8-11; 84:12-15); (3) the parties' respective lanes of travel prior to the collision, (*id.* 52:7-13, 57:10-15); and (4) the manner in which the parties applied their brakes prior to impact and how far they traveled after first braking, (*id.* 54:22-54:25; 61:5-64:10). Ruble also testified that several of the opinions offered by Beekmans' accident reconstructionist, Billy S. Cox, Jr., were deficient based on the formulas and data Cox used, (*id.* 50:16-51:2, 58:14-60:2; 71:15-72:11), and explained that in his (Ruble's) opinion, extraction of the vehicles, rather than the accident itself as he originally opined, caused several of the gouge marks on the pavement, (*id.* 22:23-24:2). Finally, Ruble provided Beekmans with several new diagrams of the vehicles, marked as Exhibit No. 19 to his deposition, which allegedly illustrate how the vehicles began to engage at impact and thereafter. (*Id.* 29:14-35:3).

On December 6, 2017, Beekmans filed the instant motion, seeking to exclude or limit Ruble's testimony to the opinions disclosed in Ruble's original (and only) disclosed report [#130]. Beekmans attacks Koenig's failure to timely comply with his disclosure obligations by introducing new opinions at Ruble's November 1 deposition and waiting until Ruble's deposition

---

[1] Koenig's current counsel, Thomas A. Crosley, substituted as counsel of record on February 16, 2016 [#16]. In requesting that his prior counsel withdraw and that Crosley be substituted his place, Koenig represented that "[t]he withdrawal and substitution will not delay these proceedings." (*See* [#15] ¶ 5).

to provide Beekmans with a list of cases in which Ruble testified as an expert, as well as information relating to Ruble's compensation. Alternatively, Beekmans challenges the reliability and helpfulness of Ruble's new opinions and testimony on the following topics: (1) the location of the parties' vehicles prior to impact; (2) how Beekmans braked under the circumstances; and (3) the rotation and angle of Koenig's vehicle prior to coming to rest after impact. Beekmans does not challenge Ruble's qualifications, the relevance of his testimony, or the reliability or helpfulness of his timely disclosed opinions.

## II. Legal Standards

*Expert-Disclosure Obligations.* Federal Rule of Civil Procedure 26(a)(2) governs a party's expert-disclosure obligations. Under Rule 26, retained experts are required to produce a written report, containing the following information: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).

"A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Initial expert disclosures are expected to be "full and complete." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016). Supplementation is required where parties learn that any information in their initial expert disclosures is incorrect or incomplete. *Id.* (citing Fed. R. Civ. P. 26(e)(2)). Supplemental expert disclosures must be made by the time Rule 26(a)(3) pretrial disclosures are due, *i.e.*, 30 days

prior to trial. *C.F. Bean*, 841 F.3d at 371; Fed. R. Civ. P. 26(a)(3)(B). Supplemental disclosures, however, "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *C.F. Bean*, 841 F.3d at 371 (quotation marks omitted); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 571 (5th Cir. 1996) (affirming district court's exclusion of untimely supplemental expert report and noting that the purpose of rebuttal and supplementary disclosures is to rebut and supplement, not extend the expert-disclosure deadline). While Rule 26 "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report," *In re ATP Oil & Gas Corp.*, No. 12-36187, 2015 WL 4381068, at *18 (Bankr. S.D. Tex. July 15, 2015) (quotation marks omitted), the rule "does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony," *Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 4:11-CV-103-M-V, 2012 WL 5866302, at *1 (N.D. Miss. Nov. 19, 2012).

When a party fails to disclose information required by Federal Rule of Civil Procedure 26(a), "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Additionally, or in the alternative, a court may, on motion and after providing the party an opportunity to be heard, impose "other appropriate sanctions," including ordering payment of reasonable expenses caused by the failure and informing the jury of the party's failure. *Id.*

*Rule 702*. Beekmans' challenges to the reliability and helpfulness of several of Ruble's new expert opinions are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009). Rule 702 provides that a witness

6

"'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [experts'] principles and methodology, not on the conclusions that [experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather show—by a preponderance of the evidence—that the testimony is sufficiently reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is "basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its

admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987).

**III. Analysis**

Ruble's opinions regarding the parties' pre-impact movements (save for their steering maneuvers), his opinion that the gouge marks on the pavement were caused by extraction of the vehicles, and his criticisms of Cox's methodology were not timely disclosed in accordance with Rule 26 and the Court's Scheduling Order. Koenig's failure to comply with his expert-disclosure requirements was neither substantially justified nor harmless, and exclusion of these new opinions is appropriate. Moreover, a majority of Ruble's new opinions, including opinions concerning the lanes occupied by the parties leading up to the accident and the angle at which Koenig's vehicle rotated before coming to rest, are either unreliable or otherwise unhelpful to the jury.

*Ruble's New Opinions and Diagrams*. Koenig failed to comply with his disclosure obligations in violation of Rule 26 and the Court's Scheduling Order. Although the deadlines in this case have been extended on several different occasions at the parties' joint request, pursuant to the Agreed Third Amended Scheduling Order [#55][2], Koenig's expert designation deadline was February 10, 2017 and Beekmans' deadline was March 13, 2017. Designations of rebuttal experts were due within 14 days of receipt of the report of the opposing expert. At issue is the extent to which Ruble offers new or supplemental opinions regarding the parties' pre-impact movements (except for their steering maneuvers) and status, including their impact speed, the lanes either party occupied prior to impact, the parties' location at any point prior to impact, the

---

[2] Although the District Court later entered an Agreed Fourth Amended Scheduling Order [#113] to govern this action on September 7, 2017, at the time of its entry, the expert designation deadlines had already expired.

distance traveled by the parties prior to impact, and how the parties applied their breaks. Also at issue are opinions concerning whether vehicle extraction from the accident scene or the accident itself caused the gouge marks on the pavement and Ruble's criticisms of Cox's accident reconstruction that Ruble revealed for the first time at his November 1, 2017 deposition. Koenig, in his response, concedes that Ruble did not address impact speed in his report but argues that Ruble's other previously undisclosed opinions are either implied from Ruble's finding that "Deputy Alvarez's accident report diagram and contributing factors are incorrect and unfounded" or constitute "natural extensions" of Ruble's original opinions. Ruble's deposition testimony and report, however, reveal that Ruble in fact offers new opinions well outside the scope of his original and only disclosed report.

Ruble testified at his deposition that the "whole purpose" of his initial report was to determine whether "the accident happen[ed] out in the roadway like the deputy said or was it off the side of the roadway." (Ruble Dep. 44:11-16; 8:19-23). It was this alleged inaccuracy in Deputy Alvarez's accident report that Koenig retained Ruble to address. (*Id.* 48:23-49:5). In fact, Ruble conceded that Koenig did not retain him to conduct an "in-depth reconstruction." (*Id.* 48:15-19). Ruble's report reveals what his deposition testimony confirms; the focus of his opinions was entirely on the vehicles' impact location. Although Ruble also addresses in his initial report the vehicles' impact positions, the reasonableness of the parties' steering maneuvers, and that the collision caused the pavement's gouge marks, he does not provide any other opinions, let alone a basis to support any of the new opinions he raised for the first time at his deposition. Ruble cannot cure deficiencies in his report by supplementing the report with deposition testimony after the expert-designation deadline. *See Robinson*, 2012 WL 5866302, at *1 ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them

9

with later deposition testimony"); *see also Valenzuela v. City of Haltom City*, No. 4:10-CV-127-Y, 2012 WL 13024706, at *2 (N.D. Tex. Feb. 28, 2012) ("[A] party's failure to disclose the basis for his expert's opinion as originally required generally cannot be cured by deposition testimony or supplemental disclosures.").

Ruble's rebuttal opinions discussing the deficiencies with Cox's formulas and data are similarly untimely. Koenig deposed Cox on June 1, 2017. (*See* [#89-2]). Pursuant to the Scheduling Order, Koenig's deadline to designate Ruble as a rebuttal expert would have been on or about June 15, 2017, depending on when Koenig received Cox's deposition transcript. No such timely designation occurred.

Finally, Koenig failed to timely disclose the diagrams marked as Exhibit No. 19 to Ruble's deposition. Ruble testified that he prepared these diagrams just ten days prior to his deposition. (Ruble Dep. 30:1-10). Koenig did not provide them to Beekmans until the day of Ruble's deposition. (*Id.*) Pursuant to Rule 26, retained experts are required to produce with their written report "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(iii). Although Koenig characterizes these exhibits as "revised diagrams," (Resp. ¶ 13) according to Ruble, a majority of the pages marked as Exhibit No. 19 represent the vehicles as they rotated following impact, (Ruble Dep. 30:17-21; 33:8-11) and going to final rest (*id.* 33:13-17), and the extraction of the vehicles post-collision (*id.* 33:19-22; 34:24-35:3). Ruble's report neither diagrams nor addresses any of these things. Accordingly, the diagrams contained in Exhibit No. 19 to Ruble's deposition were not timely disclosed.

The next step is to determine whether exclusion of Ruble's new opinions and diagrams is warranted, or whether some other lesser sanction is appropriate. Courts entertain the following considerations in determining whether to exclude testimony as a sanction for violation of a

discovery order: "(1) the explanation for the failure to identify the witness [or new expert opinions]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *C.F. Bean*, 841 F.3d at 372 (quotation marks omitted). These considerations favor exclusion of Ruble's new opinions and diagrams in support thereof.

First, Koenig fails to provide any reasonable explanation for his untimely disclosure. *See Beasley v. U.S. Welding Svc., Inc.,* 129 F. App'x 901, 902 (5th Cir. 2005) (affirming exclusion of expert testimony where plaintiff "offer[ed] no reasonable explanation for failing to provide the expert report timely or to seek an extension before the deadline had passed"). Nor is there one. According to Ruble, after he prepared his report in January 2014, "[t]he file just went kind of dormant," until February 2016, when Koenig's new counsel requested that Ruble perform additional accident reconstruction. (Ruble Dep. 46:16-48:19). Koenig, however, failed to provide Ruble with the additional file materials, including depositions that had already occurred, until July 27, 2017. (*Id.* 47:20-25). This was more than five months after Koenig's expert designation deadline. Accordingly, Koenig could have, but failed to, timely supplement Ruble's opinions with these additional file materials. *See Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) ("[P]ermissible supplementation means correcting inaccuracies, or filling the interstices of an incomplete report based on information ***that was not available at the time of the initial disclosure***." (quotation marks omitted) (emphasis in original)). Accordingly, there is no reasonable explanation for Koenig's failure to disclose Ruble's new opinions by way of a supplemental report prior to the expert-designation deadline. *C.f. C.F. Bean*, 841 F.3d at 372 (district court abused its discretion in excluding expert's new opinions contained in second report

where discovery upon which expert relied in formulating his new opinions was not available until after the expert disclosure deadline expired).

Nor are Ruble's new opinions so important that exclusion would unduly prejudice Koenig. To the contrary, Koenig timely designated another accident reconstructionist—John J. Smith, P.E.—to testify regarding his "investigation, inspection of the scene and vehicles, and his reconstruction of the accident that forms the basis of this lawsuit," as well as the "speeds of the vehicle at or near the time of the crash, damage to the vehicles, and the cause of the crash." (*See* [#41] at 3-4). Accordingly, excluding Ruble's new opinions will not leave Koenig without an expert witness to provide a complete accident-reconstruction analysis. *C.f. 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991) (affirming district court's exclusion of untimely designated expert where "[e]nforcement of the district court's pretrial order did not leave the defendants without an expert witness on the issue of valuation").

Permitting Ruble to expand the scope of his testimony to include several new opinions disclosed for the first time at Ruble's deposition less than three months prior to trial and after both Beekmans' expert designation deadline and the discovery deadline have expired would unduly prejudice Beekmans. By presenting these new opinions for the first time at Ruble's deposition, without providing an amended report, Koenig accomplished what Rule 26(a)(2) seeks to prevent. *Burrell v. Allstate Prop. & Cas. Ins. Co.*, No. 3:13-CV-493-CWR-FKB, 2016 WL 4284268, at *2 (S.D. Miss. Mar. 4, 2016) ("[T]he purpose of the [expert] disclosure requirements 'is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence.'") (quoting *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 1345385, at *2 (W.D. Tex. Mar. 23, 2015)).

Nor is continuance at this late stage a viable option. Trial of this matter, first filed in September of 2015, has been continued on at least two different occasions, and there have been multiple continuances of the discovery and expert-designation deadlines. Continuing trial at this late stage and re-opening the discovery and expert designation deadlines would force Beekmans to incur additional costs and impair the integrity of the Court's Scheduling Order. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) ("Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance.").

Examining these considerations separately and together, the Court finds that Koenig's failure to disclose Ruble's new opinions regarding the parties' pre-impact movements (save for their steering maneuvers), that extraction of the vehicles caused the gouge marks on the pavement, and rebuttal of Cox's accident reconstruction was neither substantially justified nor harmless, and exclusion of these new opinions is the appropriate remedy. Ruble is therefore excluded from relying upon any diagrams in support of these new opinions, including those contained in Exhibit No. 19 to his deposition. Ruble, however, may rely on the diagrams contained in Exhibit No. 19 to his deposition to the extent the diagrams are used to support his timely disclosed opinions regarding the location of the collision, the vehicles' impact positions relative to one another, the principle direction of force, and the reasonableness of the parties' steering maneuvers prior to impact. Beekmans has had ample opportunity to question Ruble regarding these new diagrams (*see* Ruble Dep. 30:15-35:3), and permitting their use at trial to support any timely disclosed opinions would not unduly prejudice Beekmans.

Having concluded that exclusion of Ruble's new opinions is the appropriate remedy, the Court need not address Beekmans' arguments that exclusion of Ruble's new opinions is proper

because Koenig failed to provide a list of cases in which Ruble testified as an expert and failed to timely provide information relating to Ruble's compensation.

*Reliability*. In light of the above ruling, the Court need not address Beekmans' objections to the reliability and helpfulness of Ruble's new opinions. In the interest of completeness, however, the Court concludes that a majority of Ruble's opinions, including those concerning the lanes occupied by the parties leading up to the accident and the angle at which Koenig's vehicle rotated before it came to rest on the roadway are either unreliable or would otherwise not assist the jury.

*Reliability – lanes occupied.* Ruble's new opinions regarding the lanes occupied by the vehicles leading up to the accident are not reliable. During his deposition, Ruble testified that the "physical evidence," (Ruble Dep. 52:16-53:4), and the "physics" regarding how Koenig applied his brakes, (*id.* 54:22-55:2), indicate that Koenig was in the proper lane of travel. But Ruble later conceded that the only physical evidence supporting this conclusion is the location of the point of impact. (*Id.* 56:17-57:5). And, according to Ruble, Koenig could have been in the wrong lane of travel and still ended up exactly where he opines the point of impact occurred. *(Id.* 52:23-53:4). Ruble's opinion that Beekmans was occupying the wrong lane of travel is similarly deficient as Ruble failed to identify any underlying facts that would support such an opinion. During his deposition Ruble admitted that there was no physical evidence which placed Beekmans in the wrong lane of travel prior to the collision. (*Id.* 57:10-25). And, as with Koenig's location prior to impact, Ruble conceded that Beekmans could have been in the correct lane of travel and ended up at the same point of impact had he applied his brakes in any manner other than a full application. (*Id.* 68:20-69:13).

14

To be reliable, an expert's testimony must be based on "sufficient facts or data." Fed. R. Evid. 702(b). Without additional underlying facts or data to support Ruble's conclusion about the lane either driver occupied as the vehicles approached each other from a distance, Ruble's opinion on this topic is too speculative. *See New Century Fin., Inc. v. New Century Fin. Corp.*, No. CIV.A. C-04-437, 2005 WL 5976552, at *4 (S.D. Tex. Nov. 29, 2005) ("It is well established that the Court should exclude an expert's testimony if the testimony is based on facts and speculations designed to bolster [a party's] position and that the testimony lacks factual foundation.")

*Reliability – angle of Koenig's vehicle's rotation.* A similar lack of underlying facts or data characterizes Ruble's opinion that Koenig's vehicle rotated at a 45 degree angle on the roadway before coming to rest. During his deposition Ruble testified that he came to this conclusion simply by looking at a picture from the collision. (Ruble Dep. 30:17-31:10). Ruble admits that he did not perform any mathematical calculation, measurement, or any other analysis to reach this conclusion. (*Id.*) Accordingly, there is no reason to believe that this "common sense" assumption would assist the jury. *See Tendeka, Inc. v. Glover*, No. CIV.A. H-13-1764, 2015 WL 2212601, at *25 (S.D. Tex. May 11, 2015) (citing inter alia Wright & Miller, 29 Federal Practice & Procedure Evidence § 6264 (noting that an expert witness's testimony is not helpful "where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic")). Accordingly, Ruble's opinion regarding the angle at which Koenig's vehicle rotated before it came to rest would not assist the jury.

## IV. Conclusion

For these reasons, the Motion to Exclude and/or Limit the Testimony of Charles R. Ruble filed by Defendant Anthony Beekmans [#130] is **GRANTED**. Ruble's testimony shall be limited to the opinions Koenig timely disclosed—the location of the collision, the vehicles' impact positions relative to one another, the principle direction of force, and the reasonableness of the parties' steering maneuvers prior to impact. Ruble may not offer conclusions or opinions concerning the parties' pre-impact movements (save for their steering maneuvers), including the lanes either party occupied prior to impact, the impact speed, the distance traveled by the parties prior to impact, and how the parties applied their breaks, or any other topics outside the scope of his report. He also may not opine concerning whether gouge marks on the pavement were caused by extraction of the vehicles as opposed to by the collision itself. Nor may Ruble be called to rebut the testimony of Beekmans' accident reconstructionist, Billy S. Cox, Jr. Finally, Ruble may rely upon the newly disclosed diagrams contained in Exhibit No. 19 to his deposition only to the extent he does so to support his timely disclosed opinions.

**IT IS SO ORDERED**.

SIGNED this 4th day of January, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE