IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENJAMIN KOENIG, | § § § | 5-15-CV-00822-RCL-RBF |
| *Plaintiff*, | § § | |
| vs. | § § § | |
| ANTHONY BEEKMANS, | § § | |
| *Defendant*. | § | |

## ORDER GRANTING MOTION TO LIMIT THE TESTIMONY
## OF DEPUTY ANTONIO ALVAREZ

Before the Court is Plaintiff Benjamin Koenig's Motion to Limit the Testimony of Deputy Antonio Alvarez [#131]. This case was assigned to the undersigned for disposition of all pre-trial matters, pursuant to Rules CV-72 and 1(c) & (d) to Appendix C of the Local Rules for the United States District Court for the Western District of Texas [#115]. The Court has diversity jurisdiction over this case, *see* 28 U.S.C. § 1332, and the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA-10-cv-0188-OLG-NN, 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011) (noting magistrate judge's § 636(b) authority to rule on motions to exclude expert testimony, which are non-dispositive).

Having considered Plaintiff Koenig's Motion [#131], Defendant Anthony Beekmans' Response [#140], Koenig's Reply [#143], the relevant law, the pleadings, and the governing scheduling order, the Court **GRANTS** Koenig's Motion to Limit the Testimony of Deputy Antonio Alvarez [#131]. Deputy Alvarez is not qualified as an expert in accident reconstruction and, at most, he might be qualified to testify as an expert in accident investigation. But even assuming for purposes of this order that Deputy Alvarez were qualified as an expert in accident investigation, opinions or testimony from him regarding the cause of the collision, its

1

contributing factors, and the positions of the vehicles prior to and at impact lacks the required indicia of reliability. Accordingly, Deputy Alvarez is excluded from offering an opinion regarding the cause of the collision, any of the collision's contributing factors, or the position of the vehicles prior to or at impact. Deputy Alvarez, however, may testify as a lay witness regarding his personal observations when he arrived at the scene, including any witness statements he personally received, provided of course that any such out-of-court statement is otherwise admissible.

I.   Background

This personal injury lawsuit arises from an October 2, 2013 head-on car accident involving Koenig and Beekmans. Koenig asserts claims for negligence and negligence per se, and seeks damages from Beekmans in excess of $1 million. It is undisputed that, as a result of the accident, Koenig sustained (and was treated for) a fractured sternum as well as a compression-type fracture of the L1 disc in his spine. (*See* [#106-1]). The parties, however, dispute whether the collision also caused Koenig to suffer a traumatic brain injury and a herniated L5-S1 disc. The parties also dispute who, Koenig or Beekmans, caused the accident, including whether one of them was driving on the wrong side of the road.

On August 26, 2016, the parties deposed Deputy Alvarez, the officer who investigated the accident and issued the Texas Peace Officer's Crash Report. (*See* [#131-4]). In his Crash Report, Deputy Alvarez provides a narrative addressing his personal observations when he arrived at the scene of the collision, including witness statements he received. In the second to last sentence of this narrative, Deputy Alvarez concludes that "[b]ased on the damage to the vehicles it appears that Unit 1 [Koenig] was driving on the wrong side of the road when he encountered Unit 2 [Beekmans]." (Rep. at 3). Accordingly, Deputy Alvarez lists Koenig's

2

"driver inattention" and "failure to drive in a single lane" and "other" as contributing factors to the collision. (*Id.*; *see also* Alvarez Dep. 28:17-24; 98:3-4). The Crash Report also includes a small diagram illustrating that Koenig was driving on the wrong side of the road when the collision occurred. (Rep. at 3).

During his deposition, Deputy Alvarez disclaimed possessing the qualifications necessary to testify as an expert in accident reconstruction, (Alvarez Dep. 34:20-35:4; 36:23-37:1), including specifically the ability to provide an expert opinion regarding which lane either party occupied, the respective fault of each party for the accident, or the vehicles' speeds at the time of impact (*id.* 35:24-36:3). He also explained that he does not remember this particular accident and that reviewing the Crash Report does not refresh his memory. (*Id.* 24:3-8; 38:22-39:6; 41:14). Accordingly, Deputy Alvarez explained that he can only testify as to what is documented in the Crash Report. (*Id.*)

On October 21, 2016, almost two months after Deputy Alvarez was deposed, Beekmans designated him as an unretained expert in this case. (*See* [#50] at 9). According to the designation, Deputy Alvarez "may give testimony regarding his accident investigation, measurements, skid marks, road and weather conditions, lighting conditions, speed limit, the position of the vehicles, witnesses and issues relating to alcohol." (*Id.*) In addition, "Deputy Alvarez may testify regarding the subject matter, facts and opinions specified in the Texas Peace Officer's Crash Report and set forth in his deposition testimony given in this case." (*Id.*) According to Beekmans' proposed pretrial order, Beekmans intends to offer Deputy Alvarez's testimony by means of video deposition. (*See* [#142-6]).

On December 14, 2017, almost a year and four months after Deputy Alvarez was deposed, Koenig filed the instant motion to limit his testimony [#131]. By his motion, Koenig

3

seeks to exclude Beekmans from "introducing any evidence or testimony from Deputy Antonio Alvarez regarding his opinions or conclusions contained in the Contributing Factors, Narrative Summary, and Diagram section of the crash report that he completed." (*See* [#131-3]). Koenig argues that Deputy Alvarez's testimony regarding the position of the vehicles prior to or during the collision and the fault of the parties is inadmissible because Deputy Alvarez is not qualified to give such opinions and his conclusions do not rest on a reliable foundation. Koenig also argues that because Deputy Alvarez did not witness the collision, he cannot offer a lay opinion on such topics.

Beekmans argues Deputy Alvarez is qualified as an accident investigator based on classroom and field training, and that all the information in his report is admissible as a public record pursuant to Federal Rule of Evidence 803(8). Finally, Beekmans argues that the Court should not consider Koenig's motion because the relevant scheduling order required objections to an expert's testimony be made within 14 days after the expert's deposition testimony—a deadline that expired long before Koenig filed the instant motion.

## II. Legal Standards

*Expert Opinion Testimony*. Koenig's challenges to the admissibility of Deputy Alvarez's expert testimony are governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir.1999); *Wells v. SmithKline Beecham Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009). Rule 702 provides that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

(3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

*Daubert* charges trial courts to act as evidentiary "gate-keepers" to ensure that proffered expert testimony is, among other things, sufficiently reliable. *Daubert*, 509 U.S. at 589, 592-93; *see Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Courts enjoy wide discretion in deciding precisely how to make such a reliability determination in a given case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The reliability inquiry focuses "on [experts'] principles and methodology, not on the conclusions that [experts] generate." *Daubert*, 509 U.S. at 594. The proponent of expert testimony is not required to show that the testimony is correct, but rather show—by a preponderance of the evidence—that the testimony is sufficiently reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Whether an expert is "basing testimony upon professional studies or personal experience," a court must ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

At the same time, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077; *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

5

*Lay Opinion Testimony*. Where a witness is not testifying as an expert, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Civ. P. 701; *see also Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002). Accordingly, to provide a lay opinion, "the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Mississippi Chem.*, 287 F.3d at 373. Moreover, "[t]he third element of Rule 701, which requires that lay opinion not be based upon scientific, technical, or other specialized knowledge within the scope of Rule 702, was added in 2000 to prevent litigants from skirting the *Daubert* standard or the expert disclosure guidelines by introducing expert opinion testimony as lay opinion testimony." *Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV. A. H-02-4782, 2008 WL 656513, at *5 (S.D. Tex. Mar. 6, 2008) (quotation marks omitted).

### III. Analysis

Deputy Alvarez is not qualified to provide an expert accident-reconstruction analysis in this case. At most, he might possess the necessary qualifications to serve as an expert in accident investigation. But even assuming for argument's sake and solely for purposes of this order that Deputy Alvarez were qualified as an expert accident investigator, his opinions concerning the cause of the collision, its contributing factors, and the positions of the vehicles prior to and at impact would not be admissible because they lack the indicia of reliability required by Rule 702 and *Daubert*.

*Timeliness of the Instant Motion*. The Court will consider Koenig's motion even though it was filed a year and four months after Deputy Alvarez's deposition. The parties' Agreed Third

Amended Scheduling Order [#55] was the governing scheduling order at the time of Deputy Alvarez's deposition on August 26, 2016. It provides that Rule 702 objections to an expert's proposed testimony were due before the later of 14 days after receipt of the expert's report or 14 days after the expert's deposition. At first blush, this seems to reflect that Koenig's motion is tardy and should not be considered. But there is a wrinkle here that ultimately counsels in favor of considering the merits of the motion.

The wrinkle is that the governing Third Amended Scheduling Order does not squarely address the situation presented. At the time of Deputy Alvarez's deposition, Beekmans had not designated him as an expert. Indeed, Beekmans did not designate Deputy Alvarez as an unretained expert until almost two months *after* Deputy Alvarez's deposition, by which time the 14-day objection period triggered by Deputy Alvarez's deposition would have run. Of course, the deadline to object to an expert ought not to have expired *before* the expert was ever identified and designated as an expert. Arguably, the deadline might have run 14 days after Deputy Alvarez's belated designation as an expert, given that by that time Koenig had received Alvarez's report and had participated in his deposition. But that conclusion requires reading into the scheduling order a deadline that is not expressly set forth, and applying that reading-between-the-lines deadline would lead to unjust consequences here.

Although it is unclear why Koenig waited until a month before trial to seek to exclude or limit Deputy Alvarez's testimony, the lack of an unambiguous violation of the governing scheduling order[1] counsels in favor of the Court performing its gatekeeping function and

---

[1] The Agreed Fourth Amended Scheduling Order superseded the Third Amended Scheduling Order on August 31, 2017, (*see* [# 111]), about a year after Deputy Alvarez's deposition. The Fourth Amended Scheduling Order sets the *Daubert* motion deadline as within 21 days after receipt of the expert's deposition transcript, without reference to the date the expert's report is

7

considering the merits of the motion. *See, e.g., United States v. Wen Chyu Liu*, 716 F.3d 159, 168 n.19 (5th Cir. 2013) ("A *Daubert* objection not raised before trial may be rejected as untimely. But a trial court has broad discretion in determining how to perform its gatekeeper function, and nothing prohibits it from hearing a *Daubert* motion during trial.") (quotation marks omitted).

*Qualifications*. Deputy Alvarez is not qualified as an expert in accident reconstruction. He in fact specifically disclaimed possessing the qualifications needed to testify as an expert in accident reconstruction, (Alvarez Dep. 34:20-35:4; 36:23-37:1), including specifically the ability to provide an expert opinion regarding the lanes either party occupied, the degree of fault of the parties, or their respective speeds (*id.* 35:24-36:3). Deputy Alvarez also admitted during his deposition that although there are programs offered to train police officers on accident reconstruction, he has not participated in any of these training courses. (*Id.* 35:11-14).

Some district courts in this circuit have permitted officers to provide an opinion on causation even where the officer is not qualified as an accident *reconstructionist*, provided the officer is qualified through training or experience as an accident *investigator*. *See, e.g., Stevens Transport, Inc. v. Glob. Transport, LLC*, No. 6:15-cv-552-MHS-JDL, 2016 WL 9244669, at *2-4 (E.D. Tex. May 24, 2016) (permitting DPS lead investigator, who was not qualified as an accident reconstructionist, to offer opinions "flowing from his accident investigation," including the cause of the accident, contributing factors to the collision, and the position of defendants' tractor-trailer at the point of impact because the investigator through his training and experience was qualified as an accident investigator) (citing *Cartwright v. Am. Honda Motor Co., Inc.*, No. 9:09cv2015, 2011 WL 3648565, at *4 (E.D. Tex. Aug. 15, 2011) (permitting investigating officer to offer an opinion regarding the cause of the accident even though the officer lacked

---

received. This deadline also does not appear to address the situation presented here, even if it were to apply in this situation.

specialized training in accident reconstruction because the officer had 15 years of experience investigating accidents)).

Based on his limited training and experience at the time of the accident, it is also doubtful—but perhaps possible—that Deputy Alvarez would be qualified to testify as an expert in accident *investigation*. At the time of the 2013 collision, Deputy Alvarez had only been working as a patrol officer for five months, without supervision by a senior officer. (Alvarez Dep. 33:23-34:1). Although Deputy Alvarez became a peace officer several years prior in 2005, he testified to receiving the "very minimum" training in traffic-accident investigation at that time. (*Id.* 11:14-18). Indeed, according to Deputy Alvarez, the focus of this training was simply to "fill out forms." (*Id.* 11:19-12:2; 13:15-21). And, although Deputy Alvarez served as a patrol officer for a year and a month beginning in 2007, before returning to his position as a detention officer, he denied receiving any accident investigation training during this time period and testified to only investigating a single accident while in this role. (*Id.* 9:15-10:22). Deputy Alvarez's 14-week training with the Bexar County Sheriff's Academy beginning November 2012 was similarly deficient. (*Id.* 17:15-17:25). According to Deputy Alvarez, this training did not cover accident investigation. (*Id.* 18:1-12). Instead, it focused on familiarizing officers with the applicable computer system and how to input information. (*Id.*)

Accordingly, the only real training in accident investigation that Deputy Alvarez appears to have received prior to the collision was 14-weeks of on-the job training while being supervised by a senior officer. (*Id.* 14:12-15:25). But even this field training, according to Deputy Alvarez, consisted of gathering the information necessary to fill out forms, as opposed to determining the cause of accidents. (*Id.*) Deputy Alvarez specifically referred to all of his training as "very limited," and explained that it did not include how to determine the locations of

9

vehicles in the roadway in a head-on collision. (*Id*. 55:13-22). Moreover, although Deputy Alvarez had investigated around 80 to 90 traffic accidents by the time of his deposition, (*id*. 16:1-7), at the time he provided his conclusions as to the cause and contributing factors of the accident here, he would only have *investigated* a handful of accidents in the five month period after graduating from supervised field training (*id*. 34:10-19) (conceding that on average, he investigates an accident only once every couple of weeks). Finally, Deputy Alvarez specifically testified to being "more comfortable" leaving the determination regarding the cause of the accident to the experts who have been trained in accident reconstruction. (*Id*. 60:24-61:2).

*Reliability*. Whether Deputy Alvarez is qualified to offer an expert opinion on the cause and contributing factors of the accident, however, is a moot issue. This is because even assuming Deputy Alvarez were qualified to testify as an expert in accident investigation, his conclusions regarding the cause of the accident, the accident's contributing factors, and the position of the vehicles prior to and at impact are too unreliable.

Deputy Alvarez concludes in the Crash Report that "[b]ased on the damage to the vehicles," Koenig was driving on the wrong side of the road when he encountered Beekmans. But Deputy Alvarez failed to explain either in his report or at his deposition how the damage to the vehicles would or possibly could support any such conclusion. Rather, Deputy Alvarez apparently based his conclusion exclusively on Beekmans' account of events. (*Id*. 42:5-42:23). Moreover, Deputy Alvarez conceded throughout his deposition that his conclusions in the Crash Report were his "best guess" or "best opinion at that time," that he was "simply speculating as to who was in whose lane," and that he could not be more than fifty percent sure whether the crash was Koenig's or Beekmans' fault. (*Id*. 43:10-44:1; 48:2-49:5; 56:15-24; 58:7-25). On this record, there is no basis to permit Deputy Alvarez to opine as an expert regarding the cause of the

10

collision, the accident's contributing factors, or the position of the vehicles prior to and at impact. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (While "[t]rained experts commonly extrapolate from existing data[,] nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.); *see also New Century Fin., Inc. v. New Century Fin. Corp.*, No. CIV.A. C-04-437, 2005 WL 5976552, at *4 (S.D. Tex. Nov. 29, 2005) ("It is well established that the Court should exclude an expert's testimony if the testimony is based on facts and speculations designed to bolster [a party's] position and that the testimony lacks factual foundation.").

There is also no basis to permit Deputy Alvarez to offer a lay opinion on the cause of the accident or its contributing factors. A law enforcement officer not otherwise qualified as an expert and who did not witness an accident firsthand may not offer lay opinion testimony regarding its cause. *See, e.g., Duhon v. Marceaux*, No. 00-31409, 33 Fed. App'x 703, 2002 WL 432383, at *4-5 (5th Cir. 2001) (trial court did not commit reversible err in excluding officer's opinion regarding who caused the accident and ordering redaction of the report to reflect same where officer was not qualified to testify as an expert in accident reconstruction nor did he witness the accident); *see also Smith v. Progressive Cty. Mut. Ins. Co.*, No. 11-972, 2012 WL 702061, at *2-3 (E.D. La. Mar. 1, 2012).

Deputy Alvarez may, however, testify as a lay witness regarding any personal observations he made when he arrived at the scene of the collision, as well as any witness statements he personally took, provided that his retellings of any such statements are otherwise admissible. *See, e.g.*, Fed. R. Civ. P. 701, 801-804.

*Admissibility of the Crash Report*. To the extent Beekmans desires to admit the Crash Report into evidence at trial, it must be redacted to comply with this order. *See* Fed. R. Evid. 803(8)(B) (public record exception to hearsay rule does not apply where the opponent shows that the source of the information or other circumstances indicate a lack of trustworthiness); *see also Moss v. Ole S. Real Estate, Inc*., 933 F.2d 1300, 1307-08 (5th Cir. 1991) (noting that the focus of determining Rule 803(8)(B) (formerly Rule 803(8)(C)) admissibility is the report's reliability—*i.e.*, whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon); *Iglinsky v. Player*, No. CIV.A. 08-650-BAJ-CN, 2010 WL 4925000, at *5 (M.D. La. Jul. 16, 2010), report and recommendation adopted, 2010 WL 4905984 (M.D. La. Nov. 24, 2010) (excluding trooper's conclusions set forth in the accident report on reliability grounds for the same reasons his testimony was inadmissible). Accordingly, the sections of the Report entitled "Contributing Factors (Investigator's Opinion)" and "Field Diagram-Not to Scale," must be redacted to remove reference to the deputy's opinions on the accident's cause or its contributing factors. The second to last sentence of the section entitled "Investigator's Narrative Opinion of What Happened," which provides that "[b]ased on the damage to the vehicles it appears that Unit 1 was driving on the wrong side of the road when he encountered Unit 2," must also be redacted. The admissibility of the remainder of the Crash Report can be addressed by the District Judge at the pre-trial conference or trial.

## IV.   Conclusion

For these reasons, the Motion to Limit the Testimony of Deputy Antonio Alvarez [#131] filed by Plaintiff Benjamin Koenig is **GRANTED** as specified herein. Deputy Alvarez is excluded from offering any opinion testimony regarding the cause of the collision, the accident's contributing factors, or the position of the vehicles prior to or at impact. Deputy Alvarez,

12

however, may testify as a lay witness regarding his personal observations when he arrived at the scene and what he documented, including any witness statements he personally took, provided that his testimony regarding those out-of-court statements is otherwise admissible. Finally, to the extent Beekmans desires to admit Deputy Alvarez's Crash Report at trial, it should be redacted to comply with the terms of this order.

**IT IS SO ORDERED**.

SIGNED this 9th day of January, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE